Mr. Cardoso is asking the court to review the Eastern Court's restrictions on its First Amendment rights to use the Internet, using the same method of analysis which the Supreme Court used in other court cases. Um, because I don't think she would understand. There were restrictions subject to the approval of the probation officer. That's the restriction going forward, the restriction in the past. Well, the restriction on the Internet is subject to the approval of the probation officer. But my argument is that approval depends entirely on whether that approval is required to enforce the other restrictions. I don't finish this. I'm sorry. I'm sorry. So, on the same page. Right. So, he is a restriction on the Internet subject to approval of the probation officer. Yes. Right. And my understanding is he did not seek approval. No, he was told that he could not use the Internet. Well, I don't know what he was told. You know, there was strict success. You cannot use the Internet without approval. I'm not arguing with you. I just want to know the facts. I just want to make sure we're on the same page. I don't have a question. I just want to make sure we're on the same page before I get to the question. So, he did not. The restriction says you may not use the Internet without approval of the probation officer. Yes. That's right. Okay. So, as long as you follow me all along and say yes, just say yes. As long as at some point you say no and we can discuss it, okay. And your client did not cause the probation officer to seek to use the Internet and was denied. That's right. So, here's my question. Why is this argument valid? Because the probation officer has no authority to grant Mr. Cardozo permission to use the Internet because the restrictions on sexually explicit material are so broad. How do we know that if he didn't ask for permission and get denied? Because the other condition of probation requires that he not be allowed to view any sexually explicit material that the probation officer deems inappropriate. That's so broad that he cannot say, you know. I mean, we don't know if a probation officer could approve. I mean, you know, if you wanted to watch Wiley Coyote, you know, I mean, just as an example, you say, you know, if you want to watch Kurt Jones, Jones, you'd say the probation officer wouldn't have authority to do that. The probation officer would have authority. Okay. So, you now agree that he has some authority. So, this is not a question where he's being asked to get permission from somebody that has no authority. So, now we'll talk about how much authority, whether certain things are included within authority and it's actually the probation officer. I mean, we don't know. So, let me get back to the question I did ask, which is why is this claim right? Why should we even consider it when your client hasn't gone and tried to take advantage of the avenue that the probation court, I'm sorry, the probation condition, sets for him? Well, there's two forms going forward. As he's under supervision now, there could be modifications because the probation condition changed for what type of material he was allowed to see going forward. Going backward, the condition he violated, he was prohibited from going to any place where sexually explicit material was pleasant, which I argue would cover all of the websites that Packingham covered. All of those, Facebook, Twitter, all that material contains at least images. He could have asked permission for those. But she couldn't have given permission because the judge had already ordered that he not go to any place that had sexually explicit material. So, she couldn't, of course, judge on what type of, she couldn't give permission to use the library because the condition on supervision. It was Packingham, right? No, I mean, the probation officer, Packingham, knows the other conditions. Supervision is absolute. That requires that he not go to any place where. How do I know the probation officer wouldn't read that as a physical place and think that he could go to Facebook as long as he had some kind of monitoring, and maybe there's some kind of child monitoring that he could have had as well that would have filtered. I mean, who knows what the probation officer would have said. Well, it is clear that the probation officer would not have allowed him to have obtained pornography. If Packingham doesn't help you with that problem, then, I mean, Packingham might help you with the idea that he can make statements about, argue away political topics or something, but it doesn't say anything about whether he can have pornography, does it? Well, it's actually what he did. I guess he is right. That's what he actually did do, which was go to the Internet and obtain large amounts of naked images of pornography. So how does Packingham help you with that? Packingham establishes that strict, that intermediate scrutiny applies, if intermediate scrutiny applies to the Internet and to sex offenders on the Internet, and that if there are, and under intermediate scrutiny, the court should look at whether there are alternatives that would be reasonable, and in this case, the alternatives. Well, but your client committed a violation not because he donned pornography, it's because he went to the Internet without seeking permission, which is what the judges explicitly, you know, justify the court's order. If he fails to understand why it wasn't incumbent upon him to ask permission, and if he got a denial, then he'd have to be interrogated about that. Why should we allow him to argue about something that he, a simple requirement that he simply failed to comply with? Because the requirement was, her requirement to obtain approval, the requirement, the judge's requirement that he obtain approval, the approval would have to be, would have to follow the judge's instructions. So you say, yeah, I'm sorry, that's the way judges operate, they give orders, and they have orders, they have requirements, and if he doesn't comply, I mean, I can't imagine the other way of running the court system, if people are able to just say, well, I'm going to ignore it, because I, you know, if you don't like it, you take an appeal. But why are you not required to comply with the judge's order? I mean, I don't mean you. I mean, your client requires you to comply with the judge's order. Counsel, let me suggest an answer for you, because I haven't heard it yet. Is it your answer, because you have a facial, not an implied First Amendment challenge? I think it's a facial First Amendment challenge. So are you too free to challenge it, whether or not the probation officer agrees to permission or not, because your clients are your clients, it's the First Amendment, but you have a total ban that used to be an individual treatment at the mail shop, the Starbucks bar, and it was an Uber at the bar. Right. And that argument is not your answer. It's a facial attack. You're a come on. Well, it's a facial attack on it, but in what a facial attack on a probation condition, I've never heard of that. It's supposed to be something that only happened in Iowa. No, it's granted. This court granted one in Newark City. This court found that the probation condition was over-complimented. I mean, this wasn't a come on, dude, that was a case, right here it was required to give permission to the probation officer? In that case, he couldn't have covered it. I don't think the counsel in Newark City had that. Yeah, absolutely. So the facial challenge here is until we know what the probation officer would have given permission for or not, we don't know what the facial challenge is until we don't know what this requirement would have been. Well, at least we know that he couldn't have covered it. You would have to argue that the Newark act of asking for permission is itself subject to a facial challenge. There's such good faith on him that asking, having to go to the probation officer to ask permission, it's sort of like if he, and this is just an analogy, if he, for example, had to get the probation officer permission to have sex with his wife, and you would say, well, you know, that is so intrusive that he could make a facial challenge. But this is not that kind of thing, is it? I mean, saying you have to go to the probation officer to get permission is what's going to give him the go-to. That's not, can't possibly substitute facial challenge. May I answer? I think I'm out of time. Yeah, yeah, certainly. You must answer. You can't end it the way that you started. I do consider, first of all, the condition going forward that required that only allows him to read or view, read old books or possess materials that contain descriptions of sexual activity that the probation officer deems inappropriate is a facially invalid restriction because he would have to ask the probation officer morally for everything he really wants to send or any message he wants to send to any cause while he's dead is facially invalid. I can see this in the brief. That's the other condition that he's also... The Internet access condition? What's it to do with humans? He's also banned the other part of the Internet. He won't change the facts and not talk about another condition. That's fine. We're talking about the Internet. If he wants, I'm talking about that. No, you can't separate the two. Of course you can. You can say he's too intrusive to ask permission to send e-mails but not to access any of the different activities. If he wants to send e-mails, we're talking about e-mails. No, the problem is that if he asks for permission, he has to ask for permission for material going out to the Internet, through e-mail or Facebook or anything else, he has to ask his probation officer for permission for what he sends, written material that he would send. He has to ask for permission, and the probation officer is entitled to deny access to possession of anything that the probation officer deems inappropriate, and that's whether it's Internet or not. And that in combination... And this argument was made to the district judge at the time the condition was proposed? Yes, Your Honor. And the district judge said that he has to get approval for every single e-mail he sends out? Well, it's not that way, but because he's forbidden from possessing or... Well, here's the problem to us. You're saying, look, the way his condition, the way his condition is, it means he has to get approval for every time he sends out an e-mail? Right. Okay, unless you did just make an argument, a decision, did you say, hey, look, and the judge said, yes, you have to get permission for every e-mail? Anything like that? He didn't answer it specifically. He just adopted the government's arguments, and that part of possessing or reading sexually stigmatized material, my main argument is that it's prohibited from reading and writing about sexual topics, because he has to learn it by the probation officer. And it's subject to her unreviewable approval based on whether she thinks it's inappropriate. So what's that reviewable about? Why can't he go, you know, if he thinks that she's being unreasonable, why can't he go to the back of the district judge? Because the judge said the test is whether the probation officer herself feels it's inappropriate. So for him to, the judge can't overrule. I'm sorry, so you're saying the judge can't overrule? Because he's elevated it to her feelings. So if he decides to send in a recipe to a recipe website, and the probation officer says no, you don't think that he can go to the court and say, if this is not reasonable? They would have to change the condition, but now the way it's written, she could deny access to look at this video because there's an image of a breast on the side, she won't look at it. Yeah, there's also a lot of speculation about what the probation officer would do without having bothered to go ask. There's just no way we should listen to you at all. Well, I think for the part of going backward, we know what she didn't approve, and what the judge didn't approve was any material that had sexual images. And I think that we know she wouldn't have approved it because it was not subject to being allowed to be approved at the time. And why? How would it be consistent with their peer or other cases from our court to say that a sexual offender can't have that limitation as a probation condition? I mean, I think you were going into this before when you were starting to say how intervening scrutiny was going to help you here, but I'm not sure where this argument is going. Because the images, if the images are constitutionally projected as they were just naked images, and he was not allowed to have that access, then it's a post-enforcement challenge is right for a challenge. It may be right, but how are you going to win it? I mean, so packing in was one thing, he wasn't on a supervised release or any other kind of continuing confinement. Your client was, and we have Nurki and other cases that say that sexually explicit material can be limited when you're at supervised release, so I'm not sure where you're going with this. Well, Nurki does say that Nurki narrowed it and excluded it only in appropriate forms. So, for example, if he had gone and looked at naked images in museums, that would be right. Right, but that's not what your client did. No, but it's very close, and the images are... I'm sorry, I'm talking about museums. I'm looking at porn. These are sex just very close. Well, there's different kinds. I hate Nurki. I'm sorry, Nurki was concerned about museums and literature and things, but that's not what your client, that was not the basis of the offense. I mean, it would be different if you had a violation of supervised release for reading a book, but that's not what happened. That's true, but what he did access was constitutionally protected material. For people who haven't had a sexual offense, though. There's lots of constitutional protections that you can use when you're on supervised release. See, supervised release is you can expect the police to imprison or let you stay home, but the court has very broad assertions to limit constitutional rights, including they can come in and search your house for no reason, right? That's a very big intrusion. Most people don't have that. That's the consequence of being convicted of felony. Yes. So what? Why is there any concern about us? Because under Nurki, it limited the restrictions to pornography, to sexually explicit material that the probation officer deems inappropriate, and at the time of Mr. Cardoso's violation, the conditions were broader than that. They applied to absolutely everything. So he was not, there was no way that he could have gone to a museum. He went to the Internet instead. Counsel, how do you get around this court's prior decision in 2005 that it's these persons that you don't know? I mean, if you see the Internet. In that one, I think the problem is that in that case, the government and the students both argued the case, failing to notice it. They basically called it weird, and weird was a plain error case, and they just adopted it. Essentially, the government argued that weird was binding, and the court accepted that. And then in Nurki, this court later said, oh, no, no, we don't need to call it weird because it's only a plain error. So I'm asking this court to go the same way that Nurki did, but on the Internet. And so to actually reach the issue. Thanks a lot. I think I'm going to interrupt Zach. Good morning, others. Good morning. I thank the court on behalf of the United States. Just a few things that were discussed earlier. I do think the fact that the pre-approval internet condition imposed on Mr. Cardozo did have that exception for probation officer approval. At least one reason is he didn't sit out of the round of the Supreme Court's decision impacting him. I think that's one of the primary reasons impacting him is distinguishable. If he doesn't impact him, you have a law that was outright banned, no apparent exceptions for approval. I think probably the number one reason why impacting him is distinguishable is because, as Judge Drennan noted, it was a ban on offenders past the time where these circuitous sins were not an emergency offense. The Supreme Court noted that it was a troubling fact that the DC Circuit in USC Brock, which was submitted last week with the 28-J, also looked to that fact in distinguishing it from a supervised release provision. And in that case, it was a pre-approval internet condition. So, it's not this case. I still remember a time when supervised release was limited to three, so sometimes it would be five. I mean, it was fairly limited, but now we have supervised release conditions that could be a lifetime. Yes, Your Honor. Ten years. A lifetime. And I realize how obvious that was. So, it was initially 120 months, then 108, and now as we stand here today, it's 79 months. 79 months, as we stand here today. So, it's a fairly long time out of three months to two years. And I was just wondering whether that distinction, if you have to argue between supervised release and... I mean, what if you have a lifetime of supervised release, for example? Well, if you... Is there any different exemption for that here? So... I'm talking about very long conditions. Are they really functionally... So, theoretically, they are limited, but functionally, are they so close to forever that it's really underplayed? So, yes, I do believe that they are functionally different, and that's because the second reason that distinguishes that from a supervised release case and this case in particular is the fact that this ban applied to all sexual offenders, regardless of the underlying offense conduct, and regardless of the history and characteristics of the offender. So, if you had an offender... If you had a supervised releasee who was subject to a lifetime ban or a lifetime term of supervised release, then I think the court would be looking to the reasons for that lifetime term of supervised release, which would be based on the nature and circumstances of the offense, history and characteristics of the offender, which in fact may have had nothing to do with it. It grouped everybody together. It didn't matter if they used social media websites as part of their offense or the Internet at all. So, I do think it's substantially different, and in this case in particular, we have a defendant who did use the Internet as part of the offense and is not a lifetime ban in this case. So, if he wants to have a cell phone, does he have to have it in airplane mode the whole time so that he doesn't inadvertently access the Internet? And if he wants to, you know, use Uber... Or his cell phone doesn't exist in the Internet? What? He can have... If he had a cell phone, does he have access to the Internet? No, they are still available. Thank you. How far do they have to use the Internet? So, let's say he has a cell phone. He's got an Uber. Does he get permissions from the probation officer to be able to use the Uber app whenever he wants? Or does he have to get appropriation each time he uses the Uber app? Well, Your Honor, I mean, if we had to look at the condition, it is reasonably or how it would be interpreted. You know, if he were to go past this prior approval, if he did have follow-up access to the Internet, to access certain apps, maybe Uber or, you know, Lyft, if he chooses, you know, he'd ask for approval from the probation officer. And, you know, if the probation officer were to say no, you know, despite the impound's argument, he could still go to the district judge on a 3580 or an E2 and ask for a modification to allow him to use Uber or Lyft, which, in this case, as Your Honor's point out, he just did not do. So we don't know. Your Honor, I'm sorry. You can see that he's entitled to have a web-enabled cell phone. I'm just trying to, like, why couldn't the court just say you don't get one of those things? You get a regular cell phone that only makes phone calls. And if you want to go on a ride, you call a taxi. And I think that's within the court's discretion looking at the offender in particular. What we have here in this case is that Mr. Cardozo never asked. So we just don't know. Well, that's not quite the asking part. I mean, there's a certain aspect of the First Amendment, the use of censorship, and having to get the divorce permission for things. And there was something, um, offensive from the First Amendment. And I realize he's probationary, or he's partisan, so he doesn't get all constitutional rights. But the fact of having to ask permission to engage in First Amendment activity is itself a burden. I know he really is there. And I'm just wondering whether that can be sufficiently challenged. So the point would be to say, look, I don't ask permission from a probation officer because of their act of asking permission to engage in speech is offensive to the First Amendment. So, yes, Your Honor, and I do think the analysis is different. Like Your Honor said during the impounding argument is about anticipation of challenge to a supervised release condition. The challenge is that, at least in this instance, would be that it's, you know, the deprivation is greater than necessary. How great is reason than necessary? Well, the thing is, I'm not convinced that we can include him in the First Amendment challenge. He hasn't asked permission. I've not seen him before as a First Amendment challenger. So I don't think that's really probably for us. But I'm just wondering whether he can raise the, you know, he has to ask permission in a sense he could point to a solution as. But I'm just thinking of a certain side of that is that maybe the very act of asking permission is subject to challenge. Since this is First Amendment activity, it's the idea that you have to create your ideas, your views, your thoughts. So look at him as a specialist himself. He's a First Amendment defense. Your Honor, I would go back to the fact that this Court, the Supreme Court, has repeatedly held that conditions of supervised release or probation can infringe on fundamental rights and that is because a probationer or a supervisee is not entitled to the full liberty of qualifying citizens or citizens who are held under a criminal justice system. So I see that condition where, let's just say, look, every time you send out an email, you have to run it by the probation officer every single time. Could a probationer say, look, it's too intrusive. I'm not going to go on and try to ask and then, you know, object to. You know, unless the probation officer says you can't send out an email, you have to go to the district court and argue that that was an incorporated authority. But I object to this idea that you have to do it every single time. It's just too burdensome. It makes the activity impossible. It gives a probation officer's sensitive of all my thinking, all my communications, and the very process of asking is, you know, is being valid on the first amendment. Can he raise that kind of challenge? I mean, could he hypothetically raise that kind of challenge? I mean, yes, you could and say that the condition, you know, is resulted, as it's being applied by the probation officer, you know, is unduly burdensome. You know, we'll take that first. If the probation officer were to say that, which did not happen here because he never asked, we'd take that to the district court judge on the 3583E2 and, you know, go that route. I mean, that has to be paid out of you. But in a supervised release, he has the challenges, conditions of supervised release, rather than just going out and getting internet access on the computer, massive amounts of pornography, you know, especially in a condition where he allows the probation officer approval, which this party has found, you know, is a reason that has out-of-graded greater defamation of liberty than is necessary, which the court found to be a priority. Counsel, I'm going to add a little piece. It seems to me that your partner has a pretty difficult time getting around it. It's not enough to say, it seems to me, that Reardon was a primary artist. Antelope cites Reardon, but Antelope also complains. Yes, Your Honor, it's a matter of time. May I ask Pat? I apologize. Yes, Your Honor, and I think that Antelope forecloses the argument here because despite what the attorney said in his brief saying that Antelope didn't argue the Reardon case, you know, Antelope did bring up Reardon. And you can see it in the court's opinion, you know, not on analysis, but it says, you know, Antelope argues that Reardon shouldn't apply because his crime involved less use of the Internet and was less severe than Reardon's. You know, and then the court goes on to say, although there's some appeals that have nuance, Reardon was nevertheless essential to his crime, and applying abuse of discretion upheld the reapproval of the Internet condition Thank you. Thank you, Your Honor. Yes, Your Honor. Mr. Peters, Your Honor's time, maybe a minute or a couple of years to take. I think the problem with Antelope is that in Antelope the defense never even argued that Reardon was only plain error. And so if someone tonight is bound by Reardon, is not told that it can do something different, then it's bound by Reardon and the Antelope court. But now if you're bound by Antelope, right, Antelope was a possession only offense, it wasn't plain error, and we held it was okay, the restriction was okay. Well, how can we not be bound by Antelope? Because in Murphy, this court held that Reardon wasn't binding, and so then that opens up the argument that Antelope is not the other. The track on Antelope would be that Antelope did not assess, did not address the issue of whether or not the no Internet restriction is valid, as implied, as connected to the restrictions on speech that are also together, that it's basically just keys for the restrictions on the content-based restrictions. They argued to do separately. The court decided to do separately, and our position is that you can't look at the approval of Internet restriction by itself. It has to be looked at together with sphere restrictions on the First Amendment rights. If there's no restriction on what type of material, then the approval of the Internet would be valid. That's my argument. Thank you. Okay, Mr. Tiger, we'll see you in a second.
judges: Kozinski, Friedland, Bennett